IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Mary Kay Inc., | ) | C/A No. 4:11-972-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Leslie Ayres, individually and d/b/a | ) | |
| Your Little Make Up Shoppe and d/b/a | ) | |
| My Little Make Up Shoppe, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Mary Kay Inc. ("Mary Kay" or "Plaintiff"), which manufactures and distributes cosmetics, toiletries, skin care, and related products, filed a Verified Complaint ("Complaint") against Defendant Leslie Ayres, individually and d/b/a Your Little Makeup Shoppe, and d/b/a My Little Make Up Shoppe, ("Ayres") for breach of contract; unfair competition and trademark infringement pursuant to 15 U.S.C. § 1125 and § 1117, respectively ("Lanham Act"); violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* ("SCUTPA"), tortious interference with contract, tortious interference with prospective contractual relationships, and unjust enrichment. Complaint ¶¶ 7; 46–83. [Entry #1]. Mary Kay alleges that Ayres has sold and continues to sell Mary Kay products at flea markets in violation of her Independent Beauty Consultant ("IBC") agreement.

I.     Factual and Procedural Background

On April 25, 2011, Mary Kay filed its Complaint, together with a motion for a preliminary injunction against Ayres. [Entry #5]. Although Ayres was served with Mary Kay's Complaint, she has not filed an answer or other responsive pleading. Ayres also failed to respond to Mary Kay's motion, and the Honorable Terry L. Wooten granted the preliminary injunction in an order filed June 6, 2011 ("Preliminary Injunction Order"). [Entry #9]. Pursuant to Mary Kay's request, the Clerk of Court entered default against Ayres on June 14, 2011. [Entry #10, #11]. Thereafter, Mary Kay moved for a default judgment and award of attorneys' fees and other costs. [Entry #12]. Mary Kay subsequently filed a motion to amend/correct its motion for a default judgment, in which it withdrew its original request for actual damages. [Entry #15]. Pursuant to 28 U.S.C. § 636(b)(1)(B), Judge Wooten referred the default judgment motion and motion to amend to the undersigned for a Report and Recommendation ("Report"). [Entry #13].  The court grants the motion to amend [Entry #15] and considers the default judgment motion, as amended.

Mary Kay's motion for default judgment, fees, and costs focuses on its federal claims brought pursuant to the Lanham Act, although it has also sued Ayres for breach of contract and several tort causes of action. The undersigned recommends finding for Mary Kay on the Lanham Act claims based on injury from Ayres's improper use of its trademarks and damage to its goodwill. Prior to entry of the requested judgment, Mary Kay should be required to elect remedies. Because a party cannot recover twice for the

same wrong, in the event Mary Kay chooses the remedies as discussed in its motion for default judgment, it cannot also obtain remedies under its state law causes of action. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 335 (5th Cir. 2008) (finding plaintiff could not simultaneously recover attorneys' fees under breach of contract claim and lost profits pursuant to Lanham Act claim). Because Mary Kay's motion does not seek damages pursuant to those state law causes of action, they are not examined here.

The court has subject matter jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338; and 15 U.S.C. § 1051 *et seq*. *See* Complaint ¶¶ 5–6. This court has personal jurisdiction over Ayres, and venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400 because she is a South Carolina resident who conducts business in this district and because a substantial part of the alleged acts of infringement occurred here. Complaint ¶¶ 2–3, 6.

Mary Kay's counsel, Cherie W. Blackburn, stated that, prior to filing and serving the Complaint, she wrote Ayres on Mary Kay's behalf and demanded she cease and desist certain activities. *See* Blackburn Decl. ¶ 3 [Entry #12-2]. Blackburn indicated that attorney Robert Maring contacted her on March 30, 2011, and informed her he was representing Ayres in connection with responding to the cease-and-desist letter. *Id.* Blackburn received no response to her letter from Maring, Ayres, or otherwise, and she filed the Complaint, Motion for Preliminary Injunction, and Responses to Local Rule 26.01 Interrogatories on April 25, 2011. *Id.; see* Entry #1, ##3–5. On April 26, 2011, Blackburn wrote Maring again and provided him with a courtesy copy of the filed

3

Summons, Complaint, Motion for Preliminary Injunction, and interrogatory responses. Blackburn Decl. ¶ 4 & ex. A. Maring indicated to Blackburn that, although he offered to represent Ayres in this matter, he had not heard from her again and had not been able to get in touch with her. *Id.* On April 26, 2011, Mary Kay's private process server served the Summons and Complaint, Motion for Preliminary Injunction with exhibits, and Responses to Local Rule 26.01 Interrogatories on Ayres personally. *See* Aff. of Service [Entry #8-1]. Ayres's answer was due May 17, 2011. *See* Entry #8.

II.     Analysis

The undersigned has reviewed Mary Kay's Complaint, Responses to Local Rule 26.01 Interrogatories, Request for Entry of Default, Motion for Default Judgment, and the Preliminary Injunction Order, as well as all supporting and supplemental information provided. Accepting Mary Kay's well-pleaded factual allegations as true, the undersigned makes the following factual findings. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2009) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting "'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (*quoting Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001))).

Mary Kay is a Delaware corporation licensed to do business in Texas. Complaint ¶ 1. Ayres resides in and conducts business in South Carolina. *Id.* ¶¶ 2–4. Mary Kay

manufactures and distributes cosmetics, toiletries, skin care, and related products to IBCs, who then sell the products to their customers. *Id.* ¶ 7–8.

Having found the facts as set forth in Mary Kay's Complaint deemed admitted by default, the court must ensure the Complaint sets forth claims under the Lanham Act before entering default judgment. *See, e.g., Leading Edge Mktg., Inc. v. Builders Prosource, LLC*, No. 3:09-704-CMC, 2009 WL 2612817 (D.S.C. Aug. 24, 2009) (granting default judgment and permanent injunction for violation of Lanham Act); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (considering facts and evaluating plaintiff's claims prior to entry of default judgment in copyright action). The court considers whether Mary Kay has set forth claims for which relief can be granted pursuant to the standard of Fed. R. Civ. P. 12(b)(6).

To establish trademark infringement and unfair competition under the Lanham Act, Mary Kay must show the following:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (internal citations omitted); *see also CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) ("To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove, first, that it owns a valid and protectable mark, and, second, that the defendant's use of a 'reproduction, counterfeit, copy, or colorable

5

imitation' of that mark creates a likelihood of confusion." (*quoting* 15 U.S.C. § 1114(1)(a); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc*., 130 F.3d 88, 91 (4th Cir. 1997))).

As discussed in the Preliminary Injunction Order, Mary Kay has provided evidence as to each of these elements. [Entry #9 at 5]. Mary Kay has provided evidence that it owns various trademarks that it uses to promote products and that Ayres has displayed materials containing those marks after she was no longer an IBC. *See* Complaint ¶¶ 36, 37, 40–41; ex. A to Aff. of Investigator James Turner [Entry # 5-3]. Further, Mary Kay presented evidence Ayres sold a product beyond its three-year shelf life. Aff. of Mary Kay's Chief Counsel Laura Beitler ¶¶ 4, 5, 8 [Entry #5-2]. Mary Kay has demonstrated this type of sale would cause confusion for customers who rely on Mary Kay's products to be of a certain quality. Aff. of Beitler ¶¶ 5–8. Mary Kay asserts these activities create confusion among consumers about Ayres's affiliation with Mary Kay. *See Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991) (affirming district court's finding that oil wholesaler's improper use of Shell's marks was deceptive and likely to confuse consumers who rely on the trademarks as symbols of Shell quality); *see also Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009) (granting Mary Kay's motion for a permanent injunction when a former IBC was selling Mary Kay products through an online store at an internet auction site because defendant's business operation could cause confusion by leaving "Mary Kay powerless to control its image").

The undersigned finds Mary Kay has demonstrated unfair competition and trademark infringement under the Lanham Act and recommends that default judgment be entered in Mary Kay's favor as to its Lanham Act claims.

A.     Attorneys' Fees and Costs

Section 43(a) of the Lanham Act provides the following available damages:

(a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117.

Mary Kay does not seek actual damages, but argues that this is an "exceptional case" such that the court should award reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Considering the Lanham Act's legislative history, courts consider cases to be exceptional for purposes of awarding attorneys' fees when "the trademark infringement

7

can be characterized as malicious, fraudulent, deliberate, or willfull." *Selchow & Righter, Inc. v. Decipher, Inc.*, No. 84-505-N, 1985 WL 5939, *3 (E.D. Va. Dec. 20, 1985) (internal quotations omitted).

The undersigned finds that Ayres's conduct satisfies the definition of exceptional. Mary Kay presented evidence that Ayres infringed on its trademarks and violated the IBC agreement while she was still an IBC and that, after her IBC agreement was terminated, she continued to commit Lanham Act violations by selling Mary Kay products over which Mary Kay did not have quality control. Additionally, this court entered a default judgment against Ayres for infringement of another entity's intellectual property rights, which indicates her knowledge of trademark infringement, and her willful disregard of others' property rights. *See Miche Bag, LLC v. Leslie Ayers [sic], d/b/a Your Little Makeup Shoppe*, C/A No. 4:09:3261-TLW, 2010 WL 5139840 (D.S.C. Dec. 8, 2010) (order granting default judgment, including monetary damages, attorneys' fees, and costs, for willful trademark infringement); 2010 WL 5141662 (Sept. 22, 2010) (report recommending same). Accordingly, the undersigned recommends reasonable attorneys' fees be granted to Mary Kay.[1]

---

[1] Mary Kay also asserts it is entitled to attorneys' fees pursuant to Texas law, which applies to the IBC agreement between it and Ayres. [Entry #12 at 5]. However, because Mary Kay does not elaborate on that assertion and does not focus on its state law breach of contract cause of action, the undersigned will not consider whether Mary Kay could receive and/or elect attorneys' fees for that cause of action.

1.    Attorneys' Fees

In support of its request for attorneys' fees, Mary Kay submits the Declaration of Blackburn that Mary Kay has incurred $29,625.00 in attorneys' fees as of June 28, 2011, the date Mary Kay filed its motion. *See* Blackburn Decl. ¶¶ 10–19 [Entry #12-1].

In this case, Ayres has not appeared and has not challenged the fees Mary Kay seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court considers the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *Jackson v. Estelle's Place, LLC*, No. 09-1700, 2010 WL 3190697, *4 (4th Cir. Aug. 12, 2010). Although the court must consider all twelve of the factors, it need not rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a

9

reasonable fee." *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (*quoting Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further, this court's Local Civil Rule 54.02(A) provides that attorneys' fee petitions must comply with *Barber* "and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Civil Rule 54.02(A) (D.S.C.).

With these factors in mind, the court considers Blackburn's Declaration, which requests fees for work she, Attorney Angelica M. Colwell, and Paralegal Kimberly B. Taylor performed on the matter. Blackburn Decl. ¶¶ 10–13; 15.[2] More particularly, in paragraph 15, Blackburn's declaration seeks the following:

| Attorney/Paralegal | Hourly Rate | Time (Hours) | Amount ($) |
|---|---|---|---|
| Cherie W. Blackburn | $340 | 41.80 | 16, 728.00 |
| Angelica M. Colwell | $285 | 25.00 | 9,975.00 |
| Kimberly B. Taylor | $180 | 15.10 | 2,718.00 |
| William Klett | $435 | .30 | 130.50 |
| David Slough | $245 | .30 | 73.50 |
| **Totals** | | **82.50** | **$ 29,625.00** |

Blackburn declares that the work was required and reasonable in obtaining the result of a judgment against Ayres. *See id.* ¶¶ 16–17. Blackburn describes the work as including "a thorough factual investigation before the filing of the Complaint" and

---

[2]Blackburn's Declaration also requests $204 for six-tenths of an hour worked by two other individuals, William Klett and David Slough. Because the court has not been provided information regarding these persons' work or qualifications, it cannot recommend their fees be assessed. If Mary Kay supplements the record regarding these individuals and their work on this case, the district judge may wish to reconsider them.

provides some detail of that investigation, other pre-filing work, and the work performed in commencing the action and seeking the preliminary injunction and the default judgment. *Id.* ¶ 16. Further, she declares that the amount of fees requested takes into account the time spent, as well as each professional's experience, skill, and responsibility in the matter.  *Id.* ¶ 19.

Although Blackburn does not expressly discuss the *Barber* factors, the court finds that her declaration appropriately addresses many of the same considerations.  In light of the considerable work required to investigate a trademark matter prior to filing suit, and all information provided and known to the court, the undersigned submits that the 81.9 hours of time for Blackburn, Colwell, and Taylor billed and explained in Blackburn's declaration are reasonable.

In addition, Blackburn's Declaration references and attaches an article containing general information regarding average attorneys' fees nationwide as of December 2010. *Id.* ¶ 14 & ex. C. However, this article does not satisfy the requirement that one seeking attorneys' fees must establish those fees to be comparable to customary fees for like work in the relevant market of the District of South Carolina or the reasonableness of the rates requested. *See generally Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (reversing fee award, in part because "Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the [district] of similar skill and for similar work, which our case law required him to do." ); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to

the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.").

Without specific support for the requested rates, the court cannot analyze the reasonableness of hourly rates requested. Nonetheless, the court may drawn on its own knowledge of litigation rates often charged in this district. *See Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd.*, 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010) (finding requested fees to be reasonable based on court's "own knowledge of rates charged in litigation in this court" for "similar work in this geographic area[,]" while admonishing counsel to comply with the requirements of *Grissom* and *Plyler* in any future fee petitions).[3]

Last fall, the undersigned considered fee applications in a similar matter brought by Plaintiff's law firm and found it could not recommend awarding fees in excess of $200/hour for counsel because counsel had not provided sufficient record evidence regarding the appropriateness of higher fees in the South Carolina legal market for that type of work. *Miche Bag*, 2010 WL 5141662. The undersigned explained it used the $200/hour rate based on findings in another matter that such rate was an appropriate rate for counsel defending a motion to compel that did not require specialized skill that potentially could justify the higher rate requested by out-of-state attorneys. 2010 WL

---

[3] Although not specifically noted in this decision, the fee the court in *Joe Hand Promotions* found to be reasonable in the District of South Carolina was $200/hour. *See Joe Hand Promotions*, 3:10-199-CMC, Entry # 9-6 (D.S.C. March 19, 2010).

5141662, *7–8 (*citing findings in City of Myrtle Beach v. United Nat'l Life Ins.*, 4:08-1183-TLW-SVH, Entry #91 at 24–25 (D.S.C. Aug. 27, 2010)). In recommending the $200 rate, the undersigned noted that, if counsel provided additional information demonstrating that the higher hourly fees were appropriate, the district judge could choose to award additional fees when ruling on the report and recommendation. *Id.* However, it does not appear counsel provided such additional information, and the district judge awarded attorneys' fees at the $200/hour rate contemplated in the report and recommendation. *Miche Bag*, 2010 WL 5139840; *see also J&J Sports Producs. Inc. v. Brazilian Paradise*, C/A No. 4:10-3113-TLW, 2011 WL 1584107, *9 (D.S.C. Apr. 27, 2011) (counsel provided required information about relevant legal market and court found $200/hour appropriate rate for experienced attorney in matter concerning unauthorized broadcast of sporting event).

Similarly, in this case, the court does not have documentation to support a market rate higher than $200/hour, nor does it have independent knowledge of recent higher fees charged in this geographic area for matters similar to this one. Accordingly, the court recommends that the rates for Blackburn and Colwell be reduced from $340 and $285 to $200/hour. By the court's calculations, this would reduce the fee award to $16,078. In the event that, during the period within which it may file objections to this report and recommendation, Mary Kay's attorneys comply with the *Grissom* and *Plyler* requirements, the district court may wish to award a different amount of fees.

13

Based on the information and supporting documents before the court at this time, the undersigned recommends that judgment against Ayres include an award of $16,078 in attorneys' fees.

### 2.    Costs

Mary Kay also seeks costs $1,272.01 pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920 and submits a verified memorandum of costs through its counsel. [Entry #12-5]. Specifically, Mary Kay seeks to recover the following:

| Description | Amount |
|---|---|
| Private Investigators' Fees | $ 662.35 |
| Filing Fees | 350.00 |
| Document Printing and Photocopying | 101.30 |
| Process Service Fees | 142.00 |
| Telephone Calls/Postage | 7.32 |
| Pacer Service | 9.04 |
| | **$1,272.01** |

Filing fees, service fees for service of summons and complaint, and charges for document printing/photocopying are allowable costs permitted by 28 U.S.C. § 1920 and Local Civil Rule 54.03 (D.S.C.). The court finds these requested costs to be reasonable and recommends Ayres be required to pay these costs of $593.30.

None of the remaining fees requested, for private investigators' fees, telephone calls, postage, and Pacer fees, is listed among allowable expenses in 28 U.S.C. § 1920 or Local Civil Rule 54.03. The undersigned recommends the remaining portion of Mary Kay's fee request be denied. *See* Local Civil Rule 54.03(A)(2) (providing miscellaneous

fees not expressly included in Rule 54.03(A)(1) are not taxable as costs).[4] Accordingly, the undersigned recommends Mary Kay be awarded costs of $593.30.

      B.     Declaratory and Injunctive Relief and Order of Destruction

In addition to attorneys' fees and costs, Mary Kay requests a permanent injunction pursuant to 15 U.S.C. § 1116. [Entry #12 at 2–4]. The specifics of the injunctive relief Mary Kay seeks mirror the conduct enjoined by the Preliminary Injunction Order. *Compare* Entry #12 at 2–4 *with* Entry #9 at 8–9. Mary Kay also seeks a declaration that Ayres is liable for willful trademark infringement pursuant to 15 U.S.C. § 1125(a) and seeks a destruction order pursuant to 28 U.S.C. § 1118 requiring Ayres to "destroy any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of [Ayres], bearing Mary Kay's registered trademarks[.]"  [Entry #12 at 4].

The Lanham Act permits a court of competent jurisdiction to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a); *see generally Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 639–40 (N.D. Tex. 2009) (granting permanent injunction after jury found for plaintiff on Lanham Act violations, *inter alia*). Courts likewise have the authority to grant injunctions in default judgment actions involving trademark

---

[4]In its motion, Mary Kay indicates it seeks recovery of costs pursuant to 15 U.S.C. § 1117(a). However, it offers no further discussion and cites no authority regarding what costs may be awarded pursuant to that section. If Mary Kay provides additional information, the district court may wish to award these costs to the extent it finds such award proper and appropriately documented.

infringement. *See, e.g., Leading Edge Mktg.,* 2009 WL 2612817 (granting plaintiff's motion for default judgment and for permanent injunction in Lanham Act case).

A plaintiff must satisfy the traditional permanent-injunction analysis. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391–94 (2006). As explained by the Court, a plaintiff must show:

> (1)  that it has suffered an irreparable injury;
> (2)  that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3)  that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4)  that the public interest would not be disserved by a permanent injunction.

*Id.* at 391. *See PMB Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126–27 (4th Cir. 2011) (finding *eBay* factors should be considered in request for a permanent injunction pursuant to the Lanham Act); *see also Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007) (considering *eBay* factors in copyright infringement case and noting that irreparable injury often occurs when owner of intellectual property is deprived of ownership rights); *BMW of N. Am., LLC v. FPI MB Entm't*, No. 4:10-82-TLW-SVH, 2010 WL 4365838, *2 (D.S.C. Sept. 13, 2010) (*accepted* in 2010 WL 4340929 (D.S.C. Oct. 28, 2010)) (collecting cases for proposition that trademark injuries are considered irreparable).

The Complaint sets forth facts demonstrating irreparable harm and the inadequacy of a purely legal remedy. *See* Complaint ¶¶ 40–44. Mary Kay presented evidence that as of February 19, 2011, Ayres was selling Mary Kay products at two different flea markets.

*See* Mar. 22, 2011 Turner Decl. (filed Apr. 25, 2011) [Entry #5-3]. In the June 9, 2011 Preliminary Injunction Order, the court considered that evidence, among other things, in finding Mary Kay could likely establish irreparable harm. [Entry #9 at 6]. On June 25, 2011, Mary Kay's private investigator returned to the flea markets and saw the same person continuing to sell Mary Kay products. June 27, 2011 Turner Decl. (filed June 29, 2011) [Entry #14].

The undersigned recommends finding that Mary Kay has demonstrated irreparable injury and the inadequacy of a purely legal remedy. *See EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 510–11 (E.D. Va. 2009) (copyright infringement matter in which court noted analysis of first and second *eBay* factors often overlap conceptually). Despite this lawsuit and the court's Preliminary Injunction Order, Ayres has continued to advertise and sell products that infringe on Mary Kay's protected marks. Ayres's infringement has not been thwarted by court order, communications from Mary Kay's counsel, or by legal action. Mary Kay has provided Ayres with ample notice of the infringement. Prior to bringing suit, Mary Kay communicated with Ayres and terminated her IBC agreement. After being served with this suit, Ayres initially communicated with counsel who contacted Mary Kay's counsel, but failed to appear in this litigation. Her action—and inaction—demonstrates her "refusal to acknowledge [her] legal obligations, makes the threat of continued infringement likely, and underscores the ineffectiveness of a remedy at law." *EMI April Music Inc. v. Rodriguez*, 691 F. Supp. 2d 632, 635 (M.D.N.C. 2010) (finding permanent injunction appropriate in copyright infringement

17

default judgment). Additionally, Ayres's failure to appear has made it impossible for Mary Kay to present a claim for actual damages. Further, even if actual damages for prior actions could be established and awarded, those damages would not prevent future damage to Mary Kay's good will and corporate reputation and would require speculation and guesswork. *See Phelps,* 492 F.3d at 544 (noting even if future damages could be determined, they would require "a substantial amount of speculation and guesswork.")

The court also recommends a finding that Mary Kay has satisfied the third and fourth *eBay* factors. The balance of hardships tips in Mary Kay's favor. Ayres has no right to continue selling and advertising Mary Kay products, nor to profit therefrom. Her actions adversely impact Mary Kay's intellectual property and other interests. Finally, the public's interest in protecting intellectual property rights is greater than permitting Ayres to continue to infringe on Mary Kay's marks. Indeed, the public interest is enhanced by protection of intellectual property when infringement has occurred.  *White*, 618 F. Supp. 2d at 511.

Based on the recommended findings that Mary Kay has satisfied the four *eBay* factors, the undersigned recommends the court grant a permanent injunction. Further, the undersigned recommends the court issue an order of destruction pursuant to the Lanham Act, which could reduce the potential for future confusion. 15 U.S.C. § 1118; *see Hammerhead Entm't, LLC v. Ennis*, No. 4:11-65, 2011 WL 2938488 (E.D. Va. July 19, 2011) (issuing order of delivery for destruction, noting destruction would limit likelihood of future confusion). It is recommended that Ayres be ordered to deliver to Mary Kay, no

18

later than 30 days after service of the court's order, all labels, signs, prints, packages, wrappers, receptacles, and advertisements in her possession that include any of Mary Kay's registered marks.

In addition, the undersigned recommends that Ayres be required to file with the court, and serve upon Mary Kay, within 30 days after the entry and service on Ayres of the permanent injunction and destruction order, a report in writing and under oath, setting forth in detail the manner and form in which she has complied with the terms of the injunction and order. *See* 15 U.S.C. § 1116(a) (providing an injunction under Lanham Act may include requirement that defendant serve and file compliance report); *see also Adobe Sys., Inc. v. Marmoletos*, No. C 08-05514 WHA, 2009 WL 1034143, *3 (N.D. Cal. Apr. 16, 2009) (issuing injunction pursuant to 17 U.S.C. § 502 and 15 U.S.C. § 1116 (a) and requiring defendant to file and serve written report of compliance).

III.    Conclusion and Recommendation

The undersigned grants the motion to amend [Entry #15] and recommends the motion for default judgment [Entry #12], as amended, be granted.  It is recommended that Ayres be found liable for willful trademark infringement pursuant to 15 U.S.C. § 1125(a) and that Mary Kay be awarded judgment against Ayres for $16,078 in attorneys' fees pursuant to 15 U.S.C. § 1117, and $593.30 in costs, for a total of $16,671.30, barring supplementation by counsel. Additionally, under 15 U.S.C. § 1116, the undersigned recommends that the court enter a permanent injunction providing that Leslie Ayres, individually and d/b/a Your Little Make Up Shoppe and d/b/a My Little Make Up

19

Shoppe, her agents, servants, employees, and persons acting in concert or participation with her be prohibited:

1.  From competing unfairly with Mary Kay and from using Mary Kay's trademarks and trade name in any manner whatsoever that is likely to cause confusion, including, but not limited to:

    a.  falsely or misleadingly representing themselves and their activities, goods, and services to be sponsored by, approved by, or affiliated with Mary Kay;
    b.  falsely or misleadingly representing any product or service of Ayres or others as originating from, being sponsored by, or approved by Mary Kay;
    c.  committing any other acts or making any other representations, express or implied, that would infringe any of Mary Kay's trademark rights, or that would confuse, mislead, or deceive consumers as to Ayres's sponsorship by, approval by, or affiliation with Mary Kay;
    d.  inducing, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above;

2.  From breaching Ayres's IBC Agreement with Mary Kay;

3.  From interfering, or acting with others to interfere, with Mary Kay's existing contractual relationships with its IBCs and its prospective contractual relationships with new IBCs;

4.  From soliciting Mary Kay IBCs to sell Mary Kay products to them and purchasing Mary Kay products from Mary Kay IBCs when such solicitations or sales are for the purpose of reselling those products in retail or service establishments of any kind (including internet retail or auction sites) in breach of the IBC Agreement;

5.  From selling Mary Kay products at Ayres's retail establishments at Hudson's Flea Market and at Myrtle Beach Flea Market or any other retail or service establishment;

6.  From using in connection with the sale of Mary Kay products as prohibited by this injunction the names Your Little Make Up Shoppe, My Little Make Up Shoppe, or any other names used by Ayres;

7.  From using Mary Kay's trademarks or trade name in any marketing materials, banners, signs, or other advertisements or materials in a manner that implies their activities and services are sponsored by, approved by, or affiliated with Mary Kay;

8.  From committing any other acts, or making any other representations, express or implied, that would infringe upon any of Mary Kay's trademark rights, or that would confuse, mislead, or deceive consumers as to Ayres's sponsorship by, approval by, or affiliation with Mary Kay;

9.  From inducing, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1)–(8) above.

Finally, it is recommended that Ayres be required to file with the court, and serve upon Mary Kay, within 30 days after the entry and service on Ayres of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Ayres has complied with the terms of such injunction, with a sanction for Ayres's noncompliance.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record via CM/ECF and to Ayres at her last known address.

IT IS SO RECOMMENDED.

August 31, 2011                          Shiva V. Hodges
Florence, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**